The first case is the Diageo North America v. Deutsch & Sons, it's 22-2106, and Mr. Lloyd. Can you reserve two minutes for rebuttal? Yes. Please. May it please the Court. Some are born famous, some achieve fame, and some do not. To achieve fame under the Federal Dilution Statute, Congress requires proof of a household name level of recognition. When a plaintiff presents a fame case the way that Diageo did here, offering evidence to prove that Bullitt is famous among whiskey drinkers, not among the public at large, it's essential that the jury be instructed that niche market fame is not sufficient. Otherwise, the jury will make the very mistake that the jury made in this case, believing that fame among consumers meant fame among consumers of whiskey drinkers. Are you setting up a really high standard for fame, though? Just because some brand is not Nike or Disney doesn't mean that it's famous. It's not famous, right? Just be—it doesn't have to be Nike or Disney, Your Honor, but it does have to have a household name level of recognition. The evidence would need to be sufficient for the jury to find that, and in this case, the evidence was presented because the plaintiffs, the master of their case, they decided to present this case as both an infringement case and as a dilution case. So the evidence that came before the jury— What do you do with something like, for example, Dom Perignon? Ninety percent of the people in this country probably have no idea what Dom Perignon is. If you're a wine drinker, champagne drinker, it's famous. Well, I mean, I think that, Your Honor, the Cristal case with the Cristalino Cava is instructive. That's a district court decision, but we cited that in our brief. And in that instance, if the level of fame is fame among a niche market, it's insufficient. And so, to Your Honor's example, Dom Perignon and Cristal, for the Rotary brand, is famous among that niche market, but that was held to be insufficient. What about Tiffany's? A third of the people in the country have no idea what Tiffany's is, but lots of people do. Well, Your Honor, I think that— Is Tiffany's famous? Well, so I think there are two answers to Your Honor's question. The first is, there certainly is an aspect of you know it when you see it to the fame inquiry. And the vast majority of the cases that come before the courts, fame is not an issue. The issue is dilution, right? I mean, the most recent Supreme Court case involving Jack Daniels and the dog toy that we've cited, there was no question in that case. But if you were trying this case and this litigation was, you know, pending in the Southern Most of the—I'm not sure what kind of argument you would be inclined to make on showing that, you know, nobody out there had heard of Tiffany's. I mean, I don't mean to be condescending. Nobody had heard of Tiffany's, Your Honor? No one had heard of Bullock. I just want to make sure I've got your hypothetical. Tiffany's, yeah. Well, and I think— Hard pressed to say that Tiffany's is not a famous brand. And, Your Honor, that's why the nature and quality of the proof that the court would expect to find would not be a nature and quality of proof that was focused among fame or confusion involving whiskey drinkers. You sound like you're reducing all of the factors enumerated in 15 U.S.C. 1125 to just this idea of is it as famous as Jack Daniels? Well— So how do you harmonize the it needs to be that kind of fame with the idea that there are a lot of things the courts can consider and should be considering? I think in this instance, Your Honor, that's why the niche market instruction was absolutely crucial because Congress has said it has to be fame among the public at large, not fame within a niche market. But doesn't that, again, suggest that there's only one factor? It doesn't suggest that there's only one factor. It suggests, again, the nature and quality of the evidence. So it could be the amount of an advertising budget. The evidence here was pretty shaky about that before the launch of the redemption product in 2016 that was found diluted. I think that what I would say, Your Honor, is because the plaintiff is controlling their case, if the plaintiff decides that the evidence that they're going to put in of fame is not evidence of general fame, that's something that the court can examine. And we specifically asked for and preserved an objection to failure to give an instruction on niche market fame. And in this case, and again, I'm anticipating maybe what, Judge Perez, you come up with next, not saying that that's necessary in every case. I don't think that a niche market instruction is necessary in every case. And to Judge Parker, I think that what you would do in Iowa, if you were concerned that a lot of the people in Iowa maybe didn't always make it to New York and didn't make it to Fifth Street, you would introduce survey evidence. You would introduce evidence that everybody or 60 percent or 70 percent of the population has heard of this. But that's not the evidence that was introduced in this case. And because of the nature of the evidence that was introduced, we thought it was crucial that the jury be channeled because we believe that the jury had been instructed properly. But I also want to get to that. You keep mentioning about the jury instruction. Should we find that you actually objected? I know that you presented an alternative one. But once the district court said it without the niche market, my reading of the record was you didn't object. So I'd point your honor to joint appendix at pages 1934 to 1935. And there's a colloquy between the district court and counsel for Diageo. And in that colloquy, counsel specifically says that he says we would insert fame in a niche market is insufficient. There was an objection by Diageo saying they thought that was unnecessary and confusing. Counsel said, but it is the law. I can cite one of your honor's opinions. The court said, it seems to me that adding of the limitation in the niche market is a kind of a new thought in a special case and more complicating than clarifying. Now, the court can review that for abuse of discretion and take that for what it is. But your position is that that is a preserved objection? That's a preserved objection. As opposed to being brought along and being, OK. Absolutely not. No. And there were other, the issues got narrowed on appeal, your honor. And there were some instructions that were argued below and are not before you. But this instruction, we think, is crucial because of the nature of the evidence matching up to proof of fame and neglect. OK, so can you tell me, though, like where you think the difference is between the text of the statute and the instruction that they gave? I mean, I understand why you would want to insert a niche market instruction. But it's very hard for us, I think, to conclude that we need to provide the relief that you're asking for when it's so carefully tracked, the statute. I think, so the statutory language was what was given to the jury. The difficulty is, and I think it's just the nature, again, I go back to the nature and quality of the evidence that was presented in this case. The point of the instruction is the jury should not be confused on the law. And we believe the record is clear here that the failure to give a niche market instruction left the jury confused because the evidence was not about. Tell me what the principle of law you'd be asking us to create in that circumstance is. A district court judge should depart from the text of the statute in X. Like, what would be the new law you would be asking us to create to address the problem you're trying to solve? When it's necessary to clarify the statute and prevent the jury from issuing an erroneous finding of fame. But the evidence does not support fame among the general public when the evidence was of that quality that it was focused on whiskey drinkers. But isn't that where the abuse of discretion comes in? Where the district court is in the position to best understand how the jury is going to most appropriately take the instruction given them? I think that's certainly the standard of review, Your Honor. And it's certainly an unusual circumstance. But mirrored up against the fact that, again, bullet the trade dress. It's not the name. That's not what's being litigated. But the trade dress, right? The silhouette of the bullet bottle. That's what's being litigated. In this instance, it was confusing to the jury to tell them general consuming public. And I think it's appropriate for the court to look to the fact that on every other question the jury was asked, was there a likelihood of confusion between the bullet trade dress and the redemption trade dress? Was there willful conduct? The jury returned defense verdicts on all of those. And so I think in this instance, it would. So the rule I would ask Your Honor to consider adopting and to adopt in reverse is that when the nature and quality of the evidence is such that it is directed at fame in a niche market, a niche market exception instruction is necessary to make sure that we don't overextend the protection. This is the protection that allows for, in this instance, a nationwide injunction requiring a redesign. Thank you, Your Honor. Thank you. We'll see from you in a moment. Thank you. Good morning, Your Honor. May it please the court, Gianni Servadidio for the appellee Diageo, North America. Can I ask you to start on whether or not you think it was appropriately, the objection was preserved to the proposed instruction? Your Honor, the district court correctly found in this case that the precise argument the defendants are advocating here had been waived. And it's important to understand what was preserved and what was not. What was preserved was a request that the jury instructions be added to, to include the parameter niche fame is not enough. That's clearly before you, Your Honor. But the precise argument they're advocating now is that the statutory language general consuming public is confusing in the context of this case because the jury could somehow have misconstrued that to mean whiskey drinkers. And if you look at the relevant portion of the charging conference, which is at, you bear with me here, Your Honor. Your Honor, if you look at JA 1934 and 1935, nowhere in the argument presented to the district court was the argument being advocated on appeal, that that would somehow be confusing. And so this court is very clear that if you're making, if you want to preserve an instruction, if you want to preserve an appeal on a jury instruction, you have to apprise the district court of what your argument is. And that was not done here. All they argued was that the niche fame was not, the statute the instruction is given was not sufficient. And if I could just address that for a minute. There's no dispute in this case and there's no objection that the instruction closely tracked the statutory language, well recognized among the general consuming public. How did Congress come up with that language? That language was added by Congress specifically to eliminate the concept of niche fame. The original dilution act in 1995, there was some confusion as to whether that covered niche fame. Congress amended it in 2006. And this was the language they chose to eliminate niche fame. So when you use the phrase general consuming public, we'd submit it is counterintuitive that that could be confused to mean whiskey drinkers. And, and so, so this court has recognized that when you're providing clear language that tracks a statute, that's generally not error. And the argument here that the evidence that was somehow inconsistent with the evidence in the case is just not, is just counter to what happened at trial. As we, as we, as we detailed in our brief, there was a lot of evidence at trial that the fame of bullet had reached the general consuming public. And I want to, I want to get to some of that, that evidence. So some of the evidence provided to the jury shows that around November of 2016, y'all had just begun to start spending a lot of money on advertising. So wouldn't that weigh against a finding of fame when the redemption package was released? Your Honor, we think the evidence shows, and I think if you look at, um, JA, um, excuse me, prior to 2016, and if you look at that exhibit, it shows $20 million was spent on advertising in just the one year before the diluting package was launched into the market. And that $20 million just in that year is significant because that closely tracks this circuit's decision in the Savin case, which recognized that that level of advertising expenditure for a brand could be sufficient to create an issue of fact on fame. And that's just one year. It was $65 million in advertising before the diluting package hit the market. And another issue under the act is the duration of the advertising. There's no dispute that bullet was on the market in that same packaging for 17 years before the diluting package hit the market. And there was ample evidence that the jury saw and heard that the promotion had really been extensive over that entire time period. So what do we do about the fact that, uh, dilution doesn't require a finding of likelihood of confusion, but the jury didn't find, uh, and I know that, but like the jury didn't find likelihood of confusion, but instead found that the trade dresses were substantially similar. What does that do to the argument? Your Honor, I think it's two separate, completely separate tracks. And both the federal and New York dilution statute are clear in their text that you can, a cause of action exists for dilution irrespective of likelihood of confusion. So you can infer anything from the absence of an infringement verdict to say these marks were not similar. The other side has argued, oh, the jury must have found, because there was no infringement, they must have found the marks were not similar. But that's just sort of made up out of thin air. The likelihood of confusion test is a multi-factor test. And there's lots of reasons the jury could have said, found no confusion. Maybe they found there was no bad faith. Maybe they found that there were sophisticated consumers, but you can't go back and figure out what was in their mind. What we do know is that they're legally indistinct claims. I'd like to just turn to some of the questions that, um, your Honor's asked with respect to the nature of the statute and the type of proof necessary to support a federal dilution claim. It's absolutely not the case that this is a statute that has ever been construed to protect Nike or Apple alone. Many courts have rejected challenges to the legal sufficiency of the evidence under the Federal Dilution Act for brands like Savant for office supplies, or Roxy for women's apparel, or the New York City Triathlon for a race event in New York. The Farmer Says for children's toys. The Tray Dress for Doc Martin's combat boots. Courts have all rejected challenges under the Federal Act to those marks, incomparable records to what we have here. And there's just not the case that Congress ever wrote a statute that said there's a certain minimum sales level. There's a certain advertising level. Half a million, half a billion in sales, which is what we had here in just four years before the Diluting Packages Act was introduced. The other side wants to say that as a matter of law can't be enough, and no courts ever construed the statute in that manner. The posture in which this case is coming before you, the sole question is, was there a complete absence of evidence on this record that would support fame under the four-factor framework? And I think it would be a real sea change to say there's some minimum sales level or that the statute only protects Nike. And if I could just point to some of the record on the advertising, because I think it was so compelling that the notion that the advertising was limited to the whiskey drinkers is just counterfactual to what the jury heard. So the jury heard that it was in—Bullitt had been advertising magazines like GQ and Esquire that reached tens and hundreds of millions of consumers. Those are not like small publications. And a court in the Southern District— But you admit that they are more niche than perhaps like Time or People, right? Sure, you can compare circulations, but they reach the general public. And I think this court, a court in the Southern District of New York in the Diesel case that we cite on page 50 of our brief, relied on advertising specifically in GQ and Esquire as evidence of fame of the Diesel brand. But it wasn't just limited to those print advertisements. We had evidence of sports sponsorships for the San Francisco Giants. We had evidence of special events at the Super Bowl, the World Series, the All-Star Game. This is all prior to the launch of the Zulu package. The jury heard evidence that Bullitt was plastered on outdoor billboards in cities across the country. And the brand director walked through each category of those advertising and testified to the jury how many people were exposed. There was a social media program where it was on Instagram, Facebook, New York Times, Washington Post. When you tally all that up at trial, the jury heard that that reached like half a billion consumers, all those media impressions together. So we think that plus the duration was enough for the jury to reasonably conclude there was a lot of advertising. So then you look at the next problem, sales. Bullitt was the number one rye whiskey on the market. It was the number three or four bourbon on the market. The sales were more than half a billion dollars in the four-year period before the diluting package reached the market. And whiskey isn't some niche product. These were sold, they were 43 million bottles in department, in liquor stores, in supermarkets all around the country. And so I think you can look at the nature of the product and say a lot of people consume whiskey. There was evidence at trial that the market for alcoholic beverages is 200 million consumers. So when you've got penetration at the level Bullitt had into that market, the statute says you can consider that. So then there was another bucket of evidence here that the jury heard on, that the statute says you can consider, actual recognition. Executives from the opposing side, this was a rare case, the executives from the imposing side all took the stand and testified that Bullitt was very well known. The president of the defendant said on the stand at trial, that brand is so big and familiar, we'll never be able to catch them. That was the testimony from the president. Other executives said, consumers, everyone knows and loves Bullitt. The jury was entitled to take that evidence and weigh it, and supported the finding of fame. Now the other side says in their brief, well, they were really just talking about whiskey drinkers. But that's the type of weighing of the evidence and asking for it to be construed in their favor that you don't do on this posture. You don't re-argue the evidence, and if you're going to weigh it in favor of either party, it's in favor of the verdict. I see I'm running out of time, but if there's anything I haven't addressed, I'd be happy to answer your questions. I think we're good. Thank you. Thank you, Your Honor. You've got two minutes. Thank you. So counsel and I agree that 1934 and 1935 is where the court should look in terms of error preservation. I think that it is preserved. I mean, the argument here is specifically, and I'm at 1934 at line 16. The law is very clear that fame has to be in something other than a niche market, and then at lines 20 to 22. I think it would clarify this issue for the jury just to include that language. I think that's sufficient for this court to find that it's preserved, and then the abusive discretion analysis that Your Honor and I talked about before. In terms of the- That colloquy was during the charging conference. That's correct, Your Honor. So there was a jury charge that was submitted first, and that, if we get that, Your Honor, that page, that's at JA 228. So that was asking that niche market be added, and then during the charging conference, the court considered that colloquy and said, I'm not going to go with you there. I'm going to stick with just the statutory language. Okay, and I take it nothing was said between the completion of the charge and the jury  No, not that I'm aware of, Your Honor. In terms of the evidence, what we heard from counsel today was that there was a lot of spending at various points in time. The spending really skyrocketed after the introduction of the redemption packaging. Putting that aside, when counsel says there are 65 million spent, the bullet trade dress that's at issue in this case was introduced in the market in 1999. So the idea that advertising is focused on a short period of time immediately preceding the introduction of the redemption packaging somehow is sufficient to show that it had become famous among the general consuming public. Well, I mean, wasn't it in like 16 television episodes? I mean, I think what I think your argument is that it didn't hit a certain threshold or degree because there's some evidence. And so the question for us is how do we either interpret the factors to have a threshold and what we would be having to create to find that or how what they do have somehow doesn't meet the idea of the absence of evidence. And I think that that's your burden of persuasion right now. I don't disagree with Your Honor. I think that the, but again, the nature and quality of the evidence and, you know, we're, it's rhetoric, but we're accused of cherry picking various things out of a survey. You know, there was a survey that was done in this case. And you would think, again, to your question, Judge Parker, I mean, you do a survey of Tiffany. If you did a nationwide survey of Tiffany, I think you'd get there even for, you know, a jury of people who had never been there and never visited the store and never saw the movie. I think that in this instance, they did a survey and the survey showed a very low level of recognition among the public, not a high level of recognition among the public. Right. But again, isn't that conflating all four factors to one? Well, I think, no, I don't think it's conflating all four factors. I think that really the focus of the evidence, and this is why this, you know, juxtaposition or alignment between the instruction and the nature of the evidence is really crucial in this case, is that here, while there was advertising spending and while there was a survey that we think was inconclusive, the vast majority of the evidence showed that this was directed at whiskey drinkers. This was directed at the consumers of whiskey, not the general consuming public. Thank the court. I urge you to reverse. Thank you both.